**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN  DIVISION

|  |  |  |
|---|---|---|
| GREGORY CROSBY | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | NO: 4:06CV01003 SWW |
| | * | |
| PULASKI TECHNICAL COLLEGE | * | |
| BOARD OF TRUSTEES, ET AL. | * | |
| | * | |
| Defendants | * | |
| | * | |
| | * | |

**ORDER**

Plaintiff Gregory Crosby ("Crosby") brings this employment discrimination action against the Board of Trustees ("the Board") of Pulaski Technical College ("PTC"); Dan Bakke, the President of PTC in his official and individual capacities; and Robert Blackiston, the Chief of Police of PTC in his official and individual capacities.  Before the Court are (1) Defendants' motion for judgment on the pleadings (docket entries #11, #12), Crosby's response in opposition (docket entries #19, #20), and Defendants' reply (docket entry #24) and (2) Defendants' motion for summary judgment (docket entries #21, #22, #23), Crosby's response in opposition (docket entries #29, #30, #31, #32); and Defendants' reply (docket entry #33).  After careful consideration, and for the reasons that follow, Defendants' motions will be granted and the case will be dismissed.

**Background**

PTC is a community college, located primarily on a 40-acre campus in North Little Rock.

1

Crosby, who is black, began working for PTC in April 2001 as an officer for the PTC Department of Public Safety ("DPS"). In August 2003, Maxine Sappore ("Sappore"), who also worked as a DPS officer, filed an internal grievance alleging race discrimination and sexual harassment. Crosby provided two witness statements in support of Sappore's grievance.

On October 23, 2003, Crosby filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that PTC had subjected him to race-based discrimination throughout his employment. *See* docket entry #17, Ex. #4. The EEOC issued Crosby a right-to-sue letter on October 28, 2003, but Crosby did not pursue his right to file suit within 90 days of receiving the letter.

On November 12, 2003, Crosby received a letter of warning from an individual named Mark Johnson,[1] stating that in August 2003, a student complained that Crosby had refused to assist her in filing an assault complaint against another student. *See* docket entry #32, Ex. G.

On December 11, 2003, Crosby received a second letter-of-warning from Johnson, stating that Crosby neglected to open campus buildings in a timely manner and also disobeyed a directive from his supervisor. *See* docket entry #32, Ex. I-1.

On January 12, 2004, Crosby received a letter of warning from Defendant Robert Blackiston, the PTC DPS Chief of Police, stating that Crosby failed to follow proper reporting procedures, conducted an unauthorized investigation, and interrupted a class in session. *See* docket entry #32, Ex. I-2.

On January 26, 2004, Crosby received a letter of reprimand from Blackiston, stating that

---

[1] The record contains little information regarding Mark Johnson. In his response to Defendants' statement of undisputed facts, Crosby states that Johnson is an agent of Pulaski Technical College and "part of the administrative/management staff." Docket entry #30, ¶ 20.

...

he had violated several departmental policies and procedures and failed to follow written instructions. *See* docket entry #32, Ex. I-3. The letter concludes as follows:

> This reprimand is a "FINAL WARNING". Effective today, for a period of 180 days, any violations of departmental policy and standard operating procedure, failure or resistance to follow instructions written or oral and failure to adhere to ALETA training will result in termination.

Docket entry #32, Ex. I-4.

Crosby claims that the aforementioned letters of warning and letter of reprimand were retaliatory measures taken against him for providing witness statements in support of Sappore's EEOC charge and for his own EEOC charge filed on October 23, 2003. *See* docket entry #3, ¶ 13. However, Crosby has never presented these allegations in a separate EEOC charge.

On April 22, 2004, Sappore's employment with PTC was terminated, and on June 8, 2004, Sappore filed an employment discrimination suit against PTC. Sappore's lawsuit proceeded to a bench trial on November 7, 2005, and Crosby testified on her behalf. On November 18, 2005, United States District Judge James M. Moody entered judgment for the defendants in Sappore's lawsuit. *See Sappore v. Pulaski Technical College*, No. 4:04CV00564 (E.D. Ark.), docket entries #65, #66..

Sometime in November 2005, Cindy Harkey, PTC Vice President for Student Services, and Essie Cleveland, PTC Director of Human Resources, investigated several complaints lodged against Crosby. A summary of those complaints follow:

- On October 25, 2005, a PTC student complained that Crosby harassed her and yelled at her while issuing her a ticket for parking in a handicap parking space.

- On October 31, 2005, a PTC student complained that Crosby issued her a parking ticket for hanging her handicap parking placard backwards on her review mirror.

- On November 2, 2005, a PTC student complained that Crosby issued him a ticket for

parking in a handicap space, even though the student presented Crosby documentation showing that he had been issued a handicap parking permit. The student complained that Crosby harassed him and was sarcastic and disrespectful. On November 12, 2005, the aforementioned student filed a second complaint, reporting that Crosby harassed him.

- On November 17, 2005, a PTC student complained that Crosby issued her a ticket for parking in a handicap space. The student had a temporary handicap parking permit, but Crosby insisted that she produce documentation that the permit had been issued to her. The student, and a witness, reported that Crosby accused the student of lying.

- On November 18, 2005, a PTC student complained that Crosby issued her a ticket for parking in a handicap space, even though her handicap parking placard was on the dashboard of her car and visible from the outside of her vehicle.

- On November 21, 2005, a PTC student complained that Crosby was rude and unprofessional when she presented him documentation proving that the handicap parking placard hanging from her review mirror had been issued to her.

- On November 21, 2005, a PTC faculty member complained that a DPS officer on duty was discovered playing computer games at a time when his assistance was needed. Harkey investigated the complaint and identified Crosby as the officer who allegedly played computer games while on duty.

- On November 22, 2005, a PTC computer lab assistant submitted a statement that she witnessed two students attempting to talk to Crosby about parking tickets they had received. The assistant stated that Crosby ignored the students and laughed at them.

With the exception of the student complaint submitted on October 31, 2005, Harkey and Cleveland interviewed each person who submitted a complaint against Crosby. The student complainants told Harkey and Cleveland that Crosby treated them in a rude and unprofessional manner. On November 28, 2005 Harkey and Cleveland met with Crosby to discuss the complaints. He admitted that he issued the parking tickets referenced in the complaints, but he denied allegations that he had been rude or unprofessional.

On December 2, 2005, Harkey and Cleveland prepared a report regarding the complaints lodged against Crosby, and they submitted the report to Defendant Dan Bakke, the President of PTC. On December 5, 2005, Bakke notified Crosby, by letter, that his employment was

terminated. The letter of termination states as follows:

> Based on information provided to me through an investigation of several complaints, I have decided to terminate your employment with Pulaski Technical College for actions that have been disruptive and detrimental to the functioning of the college and actions that have brought discredit to the college. This is effective immediately. If you disagree with this action, you may file an appeal through the Pulaski Technical College Employee Grievance process found in the faculty/staff handbook.

Docket entry #21, Ex. B-1.

On August 16, 2006, Crosby filed this action against the Board, Blackiston, and Bakke, claiming that Defendants retaliated against him in violation of Title VII and the Arkansas Whistle-Blower Act and "deprived him of rights secured by the Constitution and laws of the United States of America, in violation of 42 U.S.C. § 1983." By way of relief, Crosby seeks declaratory relief, reinstatement and back pay, and compensatory damages.

## **Motion for Judgment on the Pleadings**

The standards of review for motions to dismiss under Fed. R. Civ. P 12(b)(6) and motions for judgment on the pleadings under Fed. R. Civ. P 12(c) are identical.[2] *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Accordingly, in deciding Defendants' motion, the Court must accept as true the factual assertions set forth in Crosby's amended complaint and interpret those facts in a light most favorable to him. *See Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d. 649, 651 (8th Cir. 1998). Crosby's claims should not be dismissed unless it appears beyond a doubt that he can prove no set of facts that would demonstrate an entitlement to relief. *Id*.

---

[2] Both 12(b)(6) and 12(c) motions challenge the legal sufficiency of the opposing party's pleadings. However, unlike a 12(b)(6) motion, a 12( c) motion is submitted after the pleadings have been closed. *Id*. Additionally, 12(b)(6) motions are made by a party who is the object of a claim, but a 12(c) motion may be made by either party.

In support of their motion, Defendants assert that (1) Crosby's § 1983 claims against the Board and Bakke and Blackiston in their official capacities are barred by sovereign immunity; (2) Defendants Bakke and Blackiston do not qualify as employers subject to liability under Title VII; (3) Crosby's Title VII claims regarding alleged adverse employment action occurring in 2003 and 2004 are time-barred; and (4) Defendants Blackiston and Bakke do not qualify as proper defendants under the Arkansas Whistle-Blower Act.[3]

**Sovereign Immunity**

The sovereign immunity of the States recognized in the Eleventh Amendment[4] bars any suit brought in federal court against a state or state agency, regardless of the nature of the relief sought, unless Congress has abrogated the States' immunity or a state has consented to suit or waived its immunity. *See Seminole Tribe v. Florida*, 517 U.S. 44, 74 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Edleman v. Jordan*, 415 U.S. 651, 663 (1974). In addition to barring all claims brought directly against a state or state agency, the Eleventh Amendment protects state officials sued in their official capacities from all claims, with the exception of certain claims for prospective, equitable relief. *See Murphy v. Arkansas*, 127

---

[3] Defendants also argue that Crosby's Whistle-Blower Act claim is time-barred. However, as explained in this order, the Court finds that it lacks jurisdiction to entertain Crosby's Whistle-Blower Act claim. Accordingly, the Court will not address Defendants' statute-of-limitations argument.

[4] The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The States' immunity from suit existed long before ratification of the Constitution, and it neither derives from or is limited by the Eleventh Amendment. *See Alden v. Maine*, 119 S. Ct. 2240, 2254 (1999).

F.3d 750, 754 (8th Cir. 1997).

In this case, the State has neither consented to suit nor waived its immunity with respect to Crosby's § 1983 claims, and Congress did not abrogate the States' sovereign immunity when it enacted 42 U.S.C. § 1983. *See Burk v. Beene*, 948 F.2d 489, 492-93 (8th Cir. 1991). Accordingly, PTC[5] is entitled to immunity from suit under § 1983, and Crosby's § 1983 claims for money damages against the individual defendants in their official capacities are likewise barred. However, Crosby's § 1983 claim for injunctive relief against Blackiston and Bakke in their official capacities and his claims against these defendants in their individual capacities are not barred under the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908).

**Title VII Claims Against Blackiston and Bakke**

Defendants assert that Blackiston and Bakke do not qualify as employers subject to liability under Title VII. Defendants are correct. Any claim seeking to hold Blackiston and Bakke personally liable under Title VII must be dismissed. *See Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999).

**Alleged Retaliation Occurring in 2003 and 2004**

The predicate EEOC charge in this case reads as follows:

I was hired in April 2000, as a Campus Police Officer. In November 2005, I

---

[5]Crosby's claim against the Board is equivalent to a claim against PTC. In *Hadley v. North Arkansas Community Technical College,* 76 F.3d 1437 (8th Cir. 1996), the Eighth Circuit ruled that North Arkansas Community Technical College ("NACTC") is an "arm" of the State of Arkansas, entitled to immunity under the Eleventh Amendment. The Court noted that "Arkansas calls NACTC a state agency, allows for substantial local autonomy but provides ultimate state control, and–most importantly–funds the agency's general operations primarily from the state treasury." *Id*. at 1442. PTC was established and receives funds through the same state laws that govern NACTC, and the Court finds that PTC is likewise entitled to sovereign immunity.

> testified in United States District Court on behalf of a former coworker who alleged that the Respondent discriminated against her in violation of Title VII . . . . My employment was terminated on December 6, 2005.
>
> The President wrote me a letter stating that I was discharged based upon the findings of an investigation of allegations against me.
>
> I believe my employment was terminated in retaliation for my participation in an allegation of discrimination in violation of Title VII . . . .

Docket entry #1, Ex. A. In a space on the charge form reserved for the dates that the alleged discrimination took place, Crosby entered: "12-06-2005 [to] 12-06-2005."

In his amended complaint, Crosby alleges more than retaliatory termination on December 6, 2005. He claims that he became the target of retaliatory conduct in 2003, after he submitted a witness statement in support of Sappore's discrimination charge and after he filed a discrimination charge of his own on October 23, 2003. The alleged retaliatory conduct during this time frame includes the letters of warning or reprimand issued between November 12, 2003 and January 26, 2004 and being "singled out" for criticism at a staff meeting.

Defendants argue that because Crosby never filed an EEOC charge regarding these alleged instances of retaliation, any related claim is barred. The Court agrees. "'Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'" *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 223 (8th Cir. 1994)(quoting *Babrocky v. Jewel Food Co. & Retail Meatcutters,* 773 F.2d 857, 863 (7th Cir.1985))

Crosby argues that Defendants' retaliatory actions in 2003 and 2004 are actionable as part of a "continuous pattern of retaliatory conduct." However, the continuing-violation doctrine

does not apply to discrete acts of retaliation, such those alleged here. *See High v. University of Minnesota,* 236 F.3d 909, 909 (8th Cir. 2000). Furthermore, Crosby did not indicate in his EEOC charge that his termination was part of a continuing violation.[6] The Court finds that information about events that occurred in 2003 and 2004 may be useful as background evidence but provides no independent basis for relief.

### The Arkansas Whistle-Blower Act

Defendants do not assert that Crosby's claims against the PTC under the Arkansas Whistle-Blower Act are barred under the Eleventh Amendment. However, the Court finds it necessary to address this important jurisdictional issue *sua sponte*.

Although the Arkansas Whistle-Blower Act provides for citizen suits in state court against a "public employer," *see* Ark. Code Ann. § 21-1-604, the State's general waiver of sovereign immunity is insufficient to waive Eleventh Amendment immunity. A state must specify an intent to subject itself to federal court jurisdiction in order to waive Eleventh Amendment immunity, *see Faibisch v. University of Minnesota*, 304 F.3d 797, 800 (8th Cir. 2002), and after careful review, the Court finds no such provision with respect to the Arkansas Whistle-Blower Act.

Furthermore, the Court agrees with Defendants that Blackiston and Bakke are not proper defendants under the Whistle-Blower Act. The Act defines "public employer" as "[a]n agency, department, board, commission, division, office, bureau, counsel, authority, or other

---

[6]The charge form contains a checkbox for instances of "continuing action." Docket entry #1, Ex. A. Crosby left that box unchecked.

instrumentality of the State of Arkansas . . . " Ark. Code Ann. § 21-1-602(5)(A).  The definition of "public employer" does not include individuals.  In sum, the Court finds that Crosby fails to state a claim for relief under the Arkansas Whistle-Blower Act and that this claim must be dismissed without prejudice.

### III.  Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).    "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

Defendants move for summary judgment with respect to Crosby's remaining claims under Title VII and § 1983 on grounds that Crosby cannot establish a prima facie case or pretext

in support of his retaliation claim, and Bakke and Blackiston are entitled to qualified immunity with respect to Crosby's § 1983 claims. In his response in opposition to summary judgment, Crosby appears to assert a new claim--that Defendants subjected him to disparate treatment. Defendants filed a reply, asserting that any claim for disparate treatment must be dismissed for failure to exhaust administrative remedies and for lack of any genuine issues for trial. The Court will address each argument separately.

### **Retaliation**

Crosby charges that "he was retaliated against when he was ultimately terminated from his place of employment on December 5, 2005, due to several complaints being filed against him." Docket entry #31, at 14. Because Crosby provides no direct evidence of a retaliatory motive, his claim is properly analyzed according to the burden-shifting framework of *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Accordingly, the initial burden is on Crosby to establish a prima facie case, consisting of evidence that (1) he engaged in statutorily protected activity; (2) he suffered adverse employment action; and (3) the adverse action was causally linked to his protected conduct. *See Stewart v. Independent School Dist. No. 196,* 481 F.3d 1034, 1043 (8th Cir. 2007*).*

If Crosby establishes a prima facie case, the burden shifts to PTC to show a non-retaliatory reason for Crosby's termination. *Id.* If PTC meets this burden of production, the burden returns to Crosby who must present evidence that "'(1) creates a question of fact as to whether [defendant's] reason was pretextual and (2) creates a reasonable inference that [defendant] acted in retaliation.'" *Id.* (quoting *Logan v. Liberty Healthcare Corp.,* 416 F.3d 877, 880 (8th Cir.2005)).

Defendants assert that Crosby's retaliation claim must fail because he is unable to establish a prima facie case, and he is unable to show that Bakke's stated reason for terminating his employment is pretext for retaliation.  By affidavit, Bakke testifies that he made the decision to end Crosby's employment after reviewing Harkey and Cleveland's report regarding the student complaints lodged against Crosby.  Bakke states: "I was especially troubled by the overwhelming number of complaints that described Mr. Crosby's behavior as rude, harassing, disrespectful, and unprofessional. As a public safety officer, he was entrusted with the responsibility to serve and protect our community, not to humiliate or harass them.  It was further troubling to me to see that Mr. Crosby targeted the most vulnerable members of our community–disabled students."   Docket entry #21, Ex. B, ¶ 6.

Because PTC has asserted a legitimate reason for Crosby's termination, the Court will assume the existence of a prima facie case and move directly to the issue of pretext.[7]   In order to survive summary judgment, Crosby must present sufficient evidence to create a jury question as to whether Bakke's stated reason for terminating his employment is  merely pretext to hide a retaliatory motive.

Crosby forwards four arguments in an attempt to overcome summary judgment.  First, he notes that his termination came 27 days after his November 8, 2005 testimony in Sappore's discrimination suit against PTC.  However, the timing of Crosby's termination in relation to his testimony is not sufficient on its own to show that Bakke's stated reason for his termination is

---

[7]"[I]f an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext and the determinative issue of causation when bypassing the prima facie case analysis leads to clarity in framing the issue under review." *Stewart v. Independent School Dist. No. 196,* 481 F.3d 1034, 1043 (8th Cir. 2007).

merely pretext for discrimination. *See Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005).

Second, Crosby contends that Blackiston solicited the student complaints that were filed against him. However, he provides no evidence to support this speculative allegation.

Third, Crosby asserts that Blackiston ordered him to write the parking tickets that prompted student complaints against him. Crosby provides a copy of an email message he received on September 6, 2005 from Blackiston, which reads as follows:

> Please begin writing citations to any violations for Handicap Spaces. Please write "warnings"citations to any violation of no hangtag display on Faculty-Staff spaces. Please send all tickets written via the courier service. You can hold them for a day or two but no more before sending in case the person who received a citation needs to come to you for a void. Please also forward all voided tickets via the courier.

Docket entry #32, Ex. K.

The Court finds no evidence of pretext from Blackiston's email. Bakke contends that he terminated Crosby's employment because students complained that Crosby was rude and unprofessional, not because Crosby issued parking tickets.

Fourth, Crosby states that while Sappore's lawsuit was pending, Defendants were in "constant contact with their lawyers about how to handle Gregory Crosby, to avoid the appearance of retaliation." Docket entry #21, at 15. Crosby submits email messages from Blackiston to Bakke and others. In those messages, Blackiston states his suspicion that Crosby was attempting to entrap him, and he requests that a third party investigate the student complaints filed against Crosby. *See* docket entry #31, Exs. A-D.

Blackiston's impression that Crosby was attempting to entrap him and his desire that someone else investigate the student complaints against Crosby provides no evidence of pretext.

*See Stewart v. Independent School Dist. No. 196,* 481 F.3d 1034, 1043 (8th Cir. 2007)(noting that the exercise of care by supervisors to avoid litigation "in no way demonstrates that adverse actions are motivated by a desire to retaliate").  The Court finds that Crosby has failed to create a jury question as to pretext and that Defendants are entitled to summary judgment on the retaliation claim.

### Disparate Treatment

In his brief in opposition to summary judgment, Crosby alleges, for the first time in this proceeding, that he received less favorable treatment than white DPS officers.  Specifically, he claims that Blackiston permitted two white DPS officers who were caught "stealing time" from PTC to resign from their posts, rather than face termination.   Defendants assert that Crosby has no viable disparate treatment claim because (1) he failed to exhaust administrative remedies related to this claim and (2) he alleges no facts indicating that he was similarly situated to white officers who allegedly received more favorable treatment.

Under Title VII's exhaustion requirement, a claimant must give notice of all claims of discrimination in the administrative complaint.  A plaintiff "may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge."  *Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 886-87 (8th Cir. 1998).  "The breadth of the civil suit is, therefore, as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination."  *Stuart v. General Motors Corp.*, 217 F.3d 621, 631 (8th Cir. 2000) (citation omitted).

The EEOC charge predicating this lawsuit contains no allegations regarding disparate

treatment. Furthermore, Crosby's recent allegations regarding disparate treatment are not reasonably related to the substance of the single allegation set forth in the EEOC charge–that his employment was terminated in retaliation for his participation in Sappore's lawsuit. The Court agrees that Crosby failed to exhaust his administrative remedies with respect to his disparate treatment allegations and that any related claim is barred.

The Court also agrees that Crosby fails to present facts showing that he was similarly situated to officers who he claims received more favorable treatment than he. *See Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005)(stating that a plaintiff claiming disparate treatment must provide specific, tangible evidence that employees who were similarly situated in all respects to him received different treatment). The numerous complaints against Crosby charging him with rude, harassing, and unprofessional behavior makes his situation unique.

### **Qualified Immunity**

Qualified immunity shields government employees acting within the scope of their duties from suit so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would know." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Two questions guide the determination of whether Bakke and Blackiston are entitled to qualified immunity. The first is whether the facts, viewed in a light most favorable to Crosby, show that the defendants violated Crosby's federal constitutional or statutory rights. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a federal right has not been violated, Defendants are entitled to qualified immunity, and Crosby's claims against them cannot proceed. *See id*. If, however, a constitutional right may have been violated, the Court must inquire whether the right was clearly established. *Id.*

Defendants assert that the record is void of any evidence of a constitutional violation. The court agrees. The amended complaint contains no information regarding the precise constitutional deprivations that Crosby allegedly endured. *See Goff v. Bise*, 173 F.3d 1068, 1072 (8th Cir. 1999)(stating that a plaintiff must assert the violation of a constitutional right in order to withstand summary judgment on qualified immunity grounds). However, in his brief in opposition to Defendants' motion for judgment on the pleadings, Crosby indicates that his § 1983 claim comes under the Equal Protection Clause. *See* docket entry #20, at 13.

The Equal Protection Clause requires that the government treat similarly situated people alike. *Klinger v. Department of Corrections* 31 F.3d 727, 731 (8th Cir. 1994). For reasons previously stated, Crosby has failed to present facts showing that he was similarly situated to employees who received favorable treatment. The Court finds that the record fails to support a claim that Defendants violated Crosby's constitutional rights. Accordingly, Bakke and Blackiston are entitled to qualified immunity, and Crosby's claims for relief under § 1983 must be dismissed.

## IV.

For the reasons stated, Defendants' motion for judgment on the pleadings (docket entry #11) is GRANTED IN PART and Defendants' motion for summary judgment (docket entry #21) is GRANTED. Additional pending motions (docket entries #9, #18, #34) are DENIED AS MOOT.[8] There being no claims remaining in this case, pursuant to the judgment entered

---

[8] The additional pending motions include: (1) Defendants' motion to dismiss for lack of prosecution (docket entry #9); (2) Defendants' motion to strike Plaintiff's response to summary judgement; and (3) Plaintiff's motion to file a second amended complaint. Given the Court's findings with respect to Defendant's motion for judgment on the pleadings and for summary judgment, the Court will not address Defendants' additional motions. Additionally, the Court

16

together with this order, this case is DISMISSED. All claims are DISMISSED WITH PREJUDICE, with the exception of Plaintiff's claim under the Arkansas Whistle Blower Act, which is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED THIS 18TH DAY OF SEPTEMBER, 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

has reviewed Plaintiffs' proposed second amended complaint and finds that the proposed amendments do nothing to alter the Court's findings stated in this order.